IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jose Tinajero, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *-vs-* | ) | No. _____ |
| | ) | |
| City of Chicago, Reynaldo | ) | *(jury demand)* |
| Guevara, Ernest Halvorsen, | ) | |
| deceased, Hector Vergara, | ) | |
| Joseph Mohan, deceased, Randy | ) | |
| Troche, Francis Cappitelli, | ) | |
| deceased, Edward Mingey, Jacob | ) | |
| Rubinstein, and Cook County, | ) | |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT

Plaintiff, by counsel, alleges as follows:

1.  This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1367.

2.  When he was just 21 years old, plaintiff Jose Tinajero was framed for murder by notorious Chicago police detective Reynaldo Guevara and other officers.

3.  Plaintiff served twenty-five years of wrongful imprisonment before he was exonerated and released from custody in 2024.

4. The Chicago Police Department's official policies and customs of failing to discipline, supervise, and control its officers, as well as its code of silence, caused the misconduct of Guevara and the other officers.

5. Based on the powerful evidence that has come to light about Guevara's repeated wrongdoing and evidence of plaintiff's innocence, the Circuit Court of Cook County vacated plaintiff's conviction on January 31, 2024.

6. Plaintiff brings this lawsuit to secure a remedy for the grievous harms he suffered from his wrongful imprisonment.

## I. Parties

7. Plaintiff Jose Tinajero is a resident of the Northern District of Illinois.

8. Defendants Reynaldo Guevara, Ernest Halvorsen, Hector Vergara, Joseph Mohan, Randy Troche, Francis Cappitelli, and Edward Mingey were, at all relevant times, acting under color of their offices as Chicago police officers.

9. Defendants Halvorsen, Mohan, and Cappitelli are deceased. Plaintiff will move for the appointment of Special Representatives for these defendants to defend this action.

10. Plaintiff refers to Reynaldo Guevara, Hector Vergara, Randy Troche, Edward Mingey, Ernest Halvorsen, Joseph Mohan, and Francis

Cappitelli as the "individual officer defendants." Plaintiff sues these defendants in their individual capacity only.

11. Defendant City of Chicago is an Illinois municipal corporation and was at all relevant time the employer of the individual officer defendants. Plaintiff asserts federal and state law claims against defendant City of Chicago and sues the City as the potential indemnitor of the individual officer defendants.

12. Defendant Jacob Rubinstein was, at all relevant times, an Assistant Cook County State's Attorney. Plaintiff sues Rubinstein in his individual capacity only.

13. Defendant Cook County is a governmental entity within the State of Illinois and was at all relevant times the employer of Rubinstein. Plaintiff asserts a state law claim against defendant Cook County, sues the County as the potential indemnitor of Rubinstein, and does not assert any federal claim against the County.

## II. False Arrest and Unreasonable Prosecution of Plaintiff

14. On October 12, 1998, Daniel Garcia received a fatal beating in a Chicago alley near Whipple Street and Armitage Avenue.

15. Plaintiff did not have any involvement in the beating.

16. Defendants Guevara and Halvorsen investigated the murder of Daniel Garcia.

17. Defendants Guevara and Halvorsen conspired, confederated, and agreed to fabricate a false story that plaintiff, John Martinez, and Thomas Kelly had jointly beaten and robbed Garcia.

18. The acts of Guevara and Halvorsen in furtherance of their scheme to frame plaintiff include the following:

   a. They caused Margarita Casiano to make a false statement implicating plaintiff in the murder;

   b. They caused Melloney Parker to sign a false statement implicating plaintiff in the murder;

   c. They caused plaintiff to make a false confession implicating himself in the murder;

   d. They caused Martinez to make a false confession implicating himself and plaintiff in the murder;

   e. They caused Kelly to make a false confession implicating himself and plaintiff in the murder; and

   f. They caused Melloney Parker, Esteban Rodgriguez, and Jesus Fuentes to make false eyewitness identifications implicating plaintiff in the murder.

19. The acts of Guevara and Halvorsen in furtherance of their scheme to frame plaintiff also include the following:

a. They prepared police reports containing the false story;

b. They attested to the false story through the official police reports; and

c. They communicated the false story to prosecutors.

20. Defendants Vergara, Mohan, Troche, Cappitelli, and Mingey either participated in the above-described acts or knew of those acts and failed to intervene to prevent the violation of plaintiff's rights.

21. Defendant Rubinstein, acting in an investigatory capacity, participated in fabricating the false statements signed by Parker, Martinez, and Kelly.

22. The individual officer defendants and defendant Rubinstein committed the above-described wrongful acts knowing that their acts would cause plaintiff to be held in custody and wrongfully prosecuted.

23. Plaintiff was charged with murder because of the wrongful acts of the individual officer defendants and Rubinstein.

24. The prosecution relied at trial on the false story, including plaintiff's coerced confession.

25. On September 27, 2001, a jury found plaintiff guilty of first-degree murder and robbery, and the Circuit Court of Cook County sentenced plaintiff to concurrent sentences of 30 years for murder and 10 years for robbery.

26. Martinez and Kelly were also convicted of murder.

27. Plaintiff was deprived of liberty because of the above-described wrongful acts of the individual officer defendants and defendant Rubinstein.

### III. Plaintiff's Exoneration

28. Plaintiff challenged the above-described wrongful conviction after learning that lawyers for other wrongfully convicted individuals had discovered repeated misconduct by Guevara.

29. On January 31, 2024, the Circuit Court of Cook County vacated plaintiff's convictions and granted the State's request to dismiss the case.

30. Kelly's conviction was also vacated on January 31, 2024, and Martinez's conviction had been vacated on January 17, 2023.

31. Petitioner was released from prison the day after his exoneration; he had been continuously incarcerated for 25 years.

### IV. Official Policies and Customs of the Chicago Police Department Were the Moving Force for the Misconduct of the Individual Officer Defendants

32. At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated, encouraged, and condoned the misconduct of the individual officer defendants.

#### A. Failure to Discipline

33. At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers.

By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

34. Before plaintiff's arrest, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

35. Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

36. As a direct and proximate result of the Chicago Police Department's inadequate policies or customs for disciplining, supervising, and controlling its officers and the policymakers' failure to address these problems, the individual officer defendants engaged in misconduct, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

### B. Code of Silence

37. At all relevant times, the Chicago Police Department maintained a "code of silence" that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be penalized by the Department.

38. At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

39. This "code of silence" facilitated, encouraged, and enabled the individual officer defendants to engage in egregious misconduct for many years, knowing that their fellow officers would cover for them and help conceal their widespread wrongdoing.

40. In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a federal jury found that, as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

41. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

42. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

43. In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

44. On March 29, 2019, then-Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some Chicago police officers "look the other way" when they observe misconduct by other Chicago police officers.

45. In October 2020, then-Chicago Police Superintendent David Brown acknowledged in public comments that the "code of silence" continues to exist.

46. The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, Superintendent Johnson, Superintendent Brown, the Task Force, and the Department of Justice was also in place when plaintiff suffered the wrongful arrest, detention, and prosecution described above.

47. As a direct and proximate result of the City's code of silence, the individual officer defendants engaged in misconduct, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

### C. The City's Policies and Customs Have Caused Numerous Other Wrongful Convictions

48. Chicago Police Officers, including the individual officer defendants, acting pursuant to defendant City of Chicago's "code of silence" and defective discipline policy have concocted false stories, fabricated evidence, and caused wrongful convictions in many cases.

49. In each case, the officers concocted false stories and fabricated evidence because they knew that there would be no consequences for their misconduct because of defendant City of Chicago's "code of silence" and defective discipline policy.

50. These numerous cases include, but are not limited to, the following:

 a. In August of 1988, defendant Guevara caused Jacques Rivera to be falsely convicted of murder by coercing a witness to falsely identify Rivera;

b. In September of 1989, defendant Guevara caused Juan Johnson to be falsely convicted of murder by coercing a witness to falsely identify Johnson;

c. In August of 1990, defendant Guevara caused Jose Maysonet to be falsely convicted of murder by coercing him into falsely confessing;

d. In January of 1991, defendant Guevara caused Xavier Arcos to be falsely convicted of murder by coercing a witness to falsely identify Arcos;

e. In May of 1993, defendants Guevara and Halvorsen caused Armando Serrano and Jose Montanez to be falsely convicted of murder by coercing a witness to falsely testify that Serrano and Montanez admitted to committing the murder;

f. In May of 1993, defendants Guevara and Halvorsen caused Robert Bouto to be falsely convicted of murder by coercing two jailhouse informants to falsely testify that Bouto admitted to committing the murder;

g. In June of 1993, defendant Guevara caused Gabriel Iglesias to be falsely convicted of murder by coercing two witnesses to falsely identify Iglesias and by coercing a jailhouse

-11-

informant to falsely testify that Iglesias admitted to committing the murder;

h. In September of 1994, defendant Guevara caused Roberto Almodovar and William Negron to be falsely convicted of murder by coercing a witness to falsely identify Almodovar and Negron;

i. In May of 1995, defendants Guevara and Halvorsen caused Thomas Sierra to be falsely convicted of murder by coercing false testimony from two witnesses; and

j. In April of 1998, defendant Guevara caused Gabriel Solache and Arturo Reyes to be falsely convicted of murder and kidnapping by coercing them to give false confessions.

## V.   Claims

51.  As a result of the foregoing, the individual officer defendants, the City of Chicago, and defendant Rubinstein caused plaintiff to be deprived of rights secured by the Fourth, Fifth, and Fourteenth Amendments.

52.  As a supplemental state law claim against defendant City of Chicago and defendant Cook County: as a result of the foregoing, plaintiff was subjected to a malicious prosecution under Illinois law.

53.  Plaintiff hereby demands trial by jury.

WHEREFORE plaintiff requests that appropriate compensatory damages be awarded against defendants, that appropriate punitive damages be awarded against all defendants against whom punitive damages may be awarded, and that the Court award fees and costs against defendants.

/s/ Joel A. Flaxman
Joel A. Flaxman
ARDC No. 6292818
Kenneth N. Flaxman
KENNETH N. FLAXMAN P.C.
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200
jaf@kenlaw.com
*attorneys for plaintiff*